IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL HARRISON,

    Plaintiff,

v.

THE PNC FINANCIAL SERVICES
GROUP, *et al.*,

    Defendants.

Case No. 3:17-cv-75

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR
JUDGMENT BASED ON THE ADMINISTRATIVE RECORD (DOC. #9);
SUSTAINING DEFENDANTS' MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD (DOC. #10); JUDGMENT TO ENTER IN
FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF; PLAINTIFF TO
MOVE FOR ATTORNEY FEES AND COSTS WITHIN 14 DAYS;
TERMINATION ENTRY

---

This is the second lawsuit that Plaintiff, Michael Harrison, has filed under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, seeking judicial review of Defendants' denial of severance benefits under the National City Corporation Amended and Restated Management Severance Plan ("the Plan"). Named defendants include the Plan, The PNC Financial Services Group, The PNC Financial Services Group, Inc., and the Compensation and Organization Committee of the Board of National City Corporation.

This matter is currently before the Court on Plaintiff's Motion for Judgment Based on the Administrative Record, Doc. #9, and Defendants' Motion for Judgment on the Administrative Record, Doc. #10.

I. **Background and Procedural History**

Michael Harrison began working at National City Corporation ("National City") in June of 2005. In December of 2008, National City was acquired by PNC Financial Services Group, Inc. ("PNC"). Harrison subsequently received a promotion and, in June of 2009, PNC informed him that, as the Mortgage Origination Regional Manager for Southwest Ohio and Central Ohio, he was eligible for severance benefits under the National City Corporation Amended and Restated Management Severance Plan ("the Plan"). Doc. #1-3, PageID#31.

The Plan, an "employee welfare benefit plan" governed by ERISA, was implemented in September of 2008, just prior to PNC's acquisition of National City. Doc. #1-1, PageID##10-22. The Compensation and Organization Committee of the Board serves as the Plan Administrator. *Id.* at PageID##14, 21. The stated purpose of the Plan is to "maximize the Corporation's profitability and operating success by attracting and retaining key managerial and operational executive employees and allowing them to focus on their responsibilities in the event of, and following, a Change in Control." *Id.* at PageID#10. The plan defines a "Change in Control" to include a merger or other corporate reorganization, such as PNC's acquisition of National City. *Id.* at PageID##11-14.

Article 3 of the Plan sets forth the circumstances under which a Plan Participant is entitled to severance benefits in the event of a termination of employment during the Protection Period.[1] Doc. #1-1, PageID##16-17. Article 3.1 of the Plan governs involuntary terminations of employment by the "Surviving Entity," in this case, PNC. Article 3.2 of the Plan governs voluntary termination of employment by the Participant. Article 3.2 provides as follows:

> 3.2 The Participant may terminate employment with the Surviving Entity during the Protection Period with the right to severance benefits as provided in Article 4 upon the occurrence of one or more of the following events (regardless of whether any other reason for such termination exists or has occurred, including without limitation other employment):
>
> (a) A reduction in the Participant's Base Salary; or
>
> (b) The Surviving Entity of the Participant requires the Participant to have his principal location of work changed, to any location which is in excess of 50 miles from the location thereof immediately prior to the Change in Control.

Doc. #1-1, PageID##16-17.

On October 29, 2009, Harrison was informed by PNC that his assigned geographic region was being expanded to encompass Ohio, Indiana, Illinois, Michigan, Missouri, Wisconsin, New York, Pennsylvania, and Kentucky. Doc. #1-2, PageID#23. On March 15, 2010, Harrison submitted his letter of voluntary resignation, along with a request for severance benefits. *Id.* He noted that his

---

[1] The Protection Period is defined as "the period of time commencing on the Effective Date and continuing through to the fifteenth month anniversary of the Implementation Date." Doc. #1-1, PageID#16.

3

position now required him to spend approximately 60% of his time traveling within this expanded geographic region, and he was no longer able to return home each night. He maintained that this constituted a change in the "principal location of [his] work" under Article 3.2(b) of the Plan, triggering his entitlement to severance benefits. *Id.*

In April of 2010, Harrison received a letter from PNC attorney John R. Johnson, informing him that he did not qualify as a "Participant" under the Plan. Doc. #10-1, PageID#130. A "Participant" is defined as "an Employee whose job is assigned to a grade level within the range of grade level 1 through grade level 7 . . . at the earlier of the [] time of termination or the Implementation Date [of December 31, 2008] . . ." Doc. #10-1, PageID#119. Johnson stated that, because Harrison was not promoted to an eligible grade level before December 31, 2008, Harrison was not a "Participant" in the Plan. Johnson nevertheless advised Harrison that, if he disagreed, he could file a claim with the Plan Administrator. *Id.* at PageID#130.

Harrison obtained counsel and filed a claim on May 25, 2010. *Id.* at PageID##134-46. On July 27, 2010, the Plan Administrator denied the claim, finding that Harrison did not qualify as a Plan Participant. *Id.* at PageID##147-49. Harrison filed a second level appeal, but the Second-Level Appeal Committee again denied his claim and advised him of his right to file suit. *Id.* at PageID##191-96.

On January 16, 2012, Harrison filed suit against PNC. *Harrison v. The PNC Fin. Servs. Grp.,* Case No. 3:12-cv-14 (S.D. Ohio). Ultimately, the Court found

4

that the Plan Administrator's decision was arbitrary and capricious. It remanded the case for a full and fair inquiry into whether Harrison was a "Participant" in the Plan. Doc. #34 in Case No. 3:12-cv-14. The Court dismissed Harrison's request for attorney fees and costs without prejudice to renewal. *Id.*

On remand, in December of 2014, the First-Level Appeal Committee concluded that Harrison was, in fact, a "Participant" in the Plan. Nevertheless, the Committee again denied Harrison's claim for benefits, this time rejecting his argument that his expanded geographic territory constituted a change in his "principal location of work" within the meaning of Article 3.2(b). Doc. #10-2, PageID##263-68.

The Committee noted that payroll records show that, even though Harrison's geographic region was expanded, his official work location did not change; it remained "Mortgage Home Office Bldgs" in "Ohio—Miamisburg." *Id.* at PageID#266. The Committee further noted that, according to the Merriam-Webster dictionary, the term "principal" means "most important." Even accepting Harrison's contention that he spent 60% of his time traveling outside of Miamisburg, no other single location could be deemed Harrison's "most important" place of work. *Id.*

In addition, the Committee explained that a previous version of the Plan (which did not apply to Harrison) had provided for severance benefits if the Participant was required to travel more than the greater of 48 additional days per year or 20% more than was required of the Participant the three years prior to the

Change in Control. *See id.* at PageID#281. This provision, however, was specifically deleted in the 2008 Amended and Restated Management Severance Plan. The Committee found that "[i]t would thus be incongruous for the Committee to now read such a protection into the Plan where the evidence is clear that such a protection was considered and rejected by the Plan's drafters." *Id.* at PageID#267.

Harrison filed a second-level appeal. He argued for the first time that, even though his base salary remained the same during the applicable time period, his overall compensation had dropped approximately 30%. In addition, he again argued that his new travel requirements "became a de facto relocation" such that Miamisburg was no longer his principal work location. *Id.* at PageID##269-70.

On March 19, 2015, the Second-Level Appeal Committee upheld the decision of the First-Level Appeal Committee. *Id.* at PageID##310-13. It noted that, under Article 3.2(a), Harrison was not entitled to severance benefits unless his "Base Salary" was reduced. Given Harrison's concession that his base salary had remained the same, he did not satisfy the eligibility requirements under Article 3.2(a).

With respect to Harrison's argument that his travel requirements constituted a de facto change in his principal work location, the Second-Level Committee again noted that his designated work location, as listed on the payroll records, had never changed. It also found persuasive the First-Level Appeal Committee's discussion of the fact that the 2005 Plan had included certain travel requirements as a

6

severance-triggering event *in addition to* the change in "principal location of work" trigger. It noted, "[h]ad the drafters of the 2005 Plan considered these two triggers to be interchangeable, there would have been no reason for the specific inclusion of travel protections in the 2005 Plan." The Committee found that the affirmative deletion of the travel protections in the 2008 Plan indicated "a clear intent to narrow the scope of the Plan." *Id.* at PageID#312.

The Second-Level Committee further noted that:

> to accept Mr. Harrison's contentions would defy logic as it would result in a finding that Mr. Harrison actually had many principal locations of work (i.e., his entire geographic area). As the First-Level Appeal Committee noted, however, there is no reasonable method of reconciling the commonly-understood meaning of the word "principal" with the varying nature of travel throughout a geographic territory.

*Id.* at PageID#313. Accordingly, the Committee concluded that Harrison was not entitled to severance benefits under Article 3.2(b) of the Plan. *Id.*

Harrison filed this second lawsuit on March 10, 2017, again seeking judicial review of the Plan Administrator's decision under ERISA, 29 U.S.C. § 1132 (a)(1)(B).[2] He also refiled his claim for attorney's fees and costs. The parties have now filed Cross-Motions for Judgment on the Administrative Record, Docs. ##9 and 10, along with response briefs, Docs. ##13, 14.

---

[2] In October of 2015, Harrison filed a bankruptcy petition; the bankruptcy trustee, however, abandoned this claim for severance benefits and authorized Harrison to file this lawsuit.

7

II.  **Standard of Review**

ERISA permits a participant in an employee welfare benefit plan to seek judicial review of benefit eligibility determinations. 29 U.S.C. § 1132(a)(1)(B). The court reviews a denial of plan benefits by the plan administrator *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989).

If such discretionary authority is granted, the court reviews the denial of plan benefits under an "arbitrary and capricious" standard of review. *Morrison v. Marsh & McLennan Cos., Inc.,* 439 F.3d 295, 300 (6th Cir. 2006). This standard "is the least demanding form of judicial review of an administrative action; it requires only an explanation based on substantial evidence that results from a deliberate and principled reasoning process." *Id.* Under the arbitrary and capricious standard of review, the court must uphold the plan administrator's decision if the administrator's interpretation of the plan is "reasonable." *Id.* The court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Morgan v. SKF USA, Inc.,* 385 F.3d 989, 992 (6th Cir. 2004).

Here, the parties agree that, because the Plan Administrator has been given discretion to interpret the terms of the plan, the arbitrary and capricious standard of review applies.[3]

III. Analysis

  A. Denial of Severance Benefits

In Count I of his Refiled Complaint, Harrison seeks judicial review, under 29 U.S.C. § 1132(a)(1)(B), of the Plan Administrator's denial of his request for over $500,000.00 in severance benefits under the Plan. Given his voluntary resignation, Harrison's right to severance benefits is governed by Article 3.2 of the Plan which, as previously noted, provides as follows:

> 3.2 The Participant may terminate employment with the Surviving Entity during the Protection Period with the right to severance benefits as provided in Article 4 upon the occurrence of one or more of the following events (regardless of whether any other reason for such termination exists or has occurred, including without limitation other employment):
> 
> (a) A reduction in the Participant's Base Salary; or
> 
> (b) The Surviving Entity of the Participant requires the Participant to have his principal location of work changed,

---

[3] Article 14 of the Plan provides as follows:

> Except as herein provided, this Plan shall be administered by the Committee. The Committee shall have full power and authority to interpret, construe and administer this Plan and its interpretations and construction hereof, and actions hereunder, including the timing, form, amount or recipient of any payment to be made hereunder, shall be binding and conclusive on all persons for all purposes.

Doc. #1-1, PageID#21.

>        to any location which is in excess of 50 miles from the
>        location thereof immediately prior to the Change in
>        Control.

Doc. #1-1, PageID##16-17.

Harrison has now conceded that, because his base salary was not reduced, he is ineligible for severance benefits under Article 3.2(a). Doc. #9, PageID#83. Accordingly, the only question is whether he is entitled to severance benefits under Article 3.2(b), based on a change in his "principal location of work." Unfortunately, this term is not defined in the Plan. Harrison maintains that when his territory was expanded from Southwest and Central Ohio to include all of Ohio, plus Indiana, Illinois, Michigan, Missouri, Wisconsin, New York, Kentucky, and Pennsylvania, this constituted a "de facto relocation," triggering his eligibility for severance benefits under Article 3.2(b).

The Plan Administrator rejected this argument. Miamisburg was Harrison's "principal location of work" immediately prior to PNC's acquisition of National City. The Plan Administrator concluded that, even though Harrison's geographic responsibilities were later expanded, there was no change in his "principal location of work." For the following reasons, the Court concludes that the Plan Administrator's denial of severance benefits was not arbitrary or capricious. It was the result of a deliberate and principled reasoning process, based on a reasonable interpretation of Article 3.2(b).

In interpreting the meanings of terms of ERISA benefit plans, the Court applies general principles of contract law. *Farhner v. United Transp. Union*

*Discipline Income Prot. Program,* 645 F.3d 338, 343 (6th Cir. 2011). When plan language is unambiguous, words are to be given their "plain meaning in an ordinary and popular sense." *Id.* However, when the plan language is ambiguous, *i.e.*, susceptible to two or more reasonable interpretations, the court looks "to extrinsic evidence to discern the purpose of the plan as the average employee would have reasonably understood it." *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 850 (6th Cir. 2006).

When the plan gives the Plan Administrator authority to interpret the plan, the Court must give deference to the Plan Administrator's interpretation of any ambiguous terms. *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004).[4] *See also Baptist Mem'l Hosp. v. Marsaw*, 13 F. Supp. 2d 696, 701 (W.D. Tenn. 1998), *aff'd,* 208 F.3d 212 (6th Cir. 2000) (noting that, under the arbitrary and capricious standard of review, "when the parties offer rational but conflicting interpretations of an ambiguous ERISA plan term, the court should defer to the plan administrator's rational interpretation.").

The Court finds that the term "principal location of work" is ambiguous. It could reasonably mean, as Harrison suggests, the place where an employee spends most of his working hours. He maintains that, after his job responsibilities changed, he spent more than 60% of his time away from Miamisburg, traveling

---

[4] The doctrine of *contra proferentum*, whereby ambiguous terms are construed against the drafter, does not apply when a plan administrator has been given authority to interpret plan documents. *Clemons v. Norton Healthcare Inc., Retirement Plan*, 890 F.3d 254 (6th Cir. 2018).

11

around the nine states in his expanded territory. Or it could reasonably mean, as Defendants suggest, an employee's designated "home office," or the one location where he or she spends more time than any other single location.

Because the language is ambiguous, and because the Plan Administrator is given discretionary authority to interpret the Plan document, the Court must defer to the Plan Administrator's interpretation unless that interpretation is irrational. Here, the Plan Administrator cited three reasons for rejecting Harrison's proposed interpretation of Article 3.2(b).

First, the Plan Administrator noted that, although Harrison's geographical territory was expanded, the company's payroll records never changed. They still listed Miamisburg as his designated work location. Doc. #10-2, PageID##266, 312.

Second, the Plan Administrator noted that the term "principal" typically means "most important." Logically, there can be only *one* location that is the "most important." Even if Harrison spent 60% of his time traveling to various locations more than 50 miles from Miamisburg, he can identify no other *single* location as his "most important" place of work. Regardless of his expanded travel duties, he still spent more time in Miamisburg than he did in any one other location. *Id.* at PageID##266, 313.

Third, the Plan Administrator noted that, under the 2005 version of the Plan, a change in the "principal location of work" and a significant increase in travel requirements each triggered entitlement to severance benefits. *See* Doc. #10-2,

PageID#281. However, in the 2008 Amended and Restated Management Severance Plan, the "increased travel" trigger was deleted. The Plan Administrator maintains that this shows that drafters of the 2008 Plan specifically considered it and rejected it. *Id.* at PageID##266-67, 312-13. The Plan Administrator further noted that, "[h]ad the drafters of the 2005 Plan considered these two triggers to be interchangeable, there would have been no reason for the specific inclusion of travel protections in the 2005 Plan." *Id.* at PageID#312. Accordingly, the affirmative deletion of the travel protections in the 2008 Plan indicated "a clear intent to narrow the scope of the Plan." *Id.*

In response, Harrison argues that the employment location identification number in the payroll records does not necessarily indicate if a Participant's principal location of work was changed in excess of 50 miles. Harrison maintains that Article 3.2(b) should be interpreted to allow Participants to resign their employment and collect severance benefits any time there has been a "significant change in their working conditions." Doc. #9, PageID#86. He notes that "Defendants' rationale would allow an employee who was transferred to Columbus and who could return home every evening to resign his employment and receive severance benefits while denying comparable treatment to Plaintiff who was forced to travel to nine different states and be away from his family 60% of the time every week." *Id.*

Harrison also notes that, had the 2005 Plan applied to him, he would have easily satisfied the "added travel" requirement that would have triggered

entitlement to severance benefits. He notes that "there is no evidence in the record as to why this language was eliminated in the 2008 Severance Plan." He suggests that maybe it was "just too difficult to calculate [or] comprehend." *Id.*

Harrison's proposed interpretation of Article 3.2(b) is not irrational. There is some appeal to his argument that, because his job responsibilities now required him to be more than 50 miles away from Miamisburg more than 60% of the time, a significant burden on him and his family, the Plan Administrator should have found that he satisfied the requirements of Article 3.2(b), *i.e.,* that "his principal location of work changed, to any location which is in excess of 50 miles from the location thereof immediately prior to the Change in Control," and that he was entitled to severance benefits.

However, the Plan Administrator's interpretation of Article 3.2(b) cannot be deemed irrational. As explained, there can be only one "principal location of work." Given that Harrison cannot identify any other single location where he spends more time than at Miamisburg, it is difficult to say that there has been a change in his "principal location of work." Moreover, as the Plan Administrator noted, under the 2005 Plan, additional travel requirements would have triggered eligibility for severance benefits. The omission of this "trigger" in the 2008 Plan gives rise to a strong inference that the drafters intended to narrow the scope of Participants who would be eligible for severance benefits.

Because the Plan gives the Plan Administrator authority to interpret the language of the Plan, and because the Plan Administrator's interpretation of Article

3.2(b) is not irrational, the Court must give it deference. As previously noted, under the "arbitrary and capricious" standard of review, the Court "must accept a plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants." *Morgan,* 385 F.3d at 992. The Court finds that the Plan Administrator's determination that Harrison is not entitled to severance benefits under Article 3.2(b) of the Plan is reasonable and it resulted "from a deliberate and principled reasoning process." *Morrison,* 439 F.3d at 300. Accordingly, the Court must uphold it.

For these reasons, the Court overrules Plaintiff's Motion for Judgment Based on the Administrative Record, Doc. #9, and sustains Defendants' Motion for Judgment on the Administrative Record, Doc. #10.

### B. Attorney's Fees and Costs

In the first lawsuit, the Court dismissed without prejudice Harrison's claim for attorney fees and costs, noting that the threshold question of whether Harrison was a "Participant" in the Plan had yet to be determined. *See* Doc. #10-2, PageID##258-60. On remand, the Plan Administrator determined that Harrison was, in fact, a "Participant" in the Plan.

In Count II of the Refiled Complaint, Harrison again seeks attorney fees and costs under 29 U.S.C. § 1132(g)(1). That subsection of ERISA allows the Court, in its discretion, to award reasonable attorney fees and costs to either party.[5]

---

[5] Under ERISA, a claimant need not be the "prevailing party" in order to be awarded attorney fees and costs. The claimant need achieve only "some degree of

Harrison also seeks attorney fees and costs under Article 5.6 of the Plan, which broadly provides as follows:

> 5.6 It is the intent of the Corporation that the Participants not be required to incur legal fees and the related expenses associated with the interpretation, enforcement or defense of Participants' rights under this Plan by litigation or otherwise because the cost and expense thereof would substantially detract from the benefits intended to be extended to the Participant(s). Accordingly, if it should appear to the Participant(s) that the Surviving Entity has failed to comply with any of its obligations under this Plan or in the event that the Surviving Entity or any other person takes or threatens to take any action or proceeding designed to deny, or to recover from, any or all Participants the benefits provided or intended to be provided to the Participant(s) hereunder, the Participant(s) may from time to time retain counsel of Participant(s)'s choice. *If the Participant(s) prevails, in whole or part, in connection with any of the foregoing, the Surviving Entity will pay and be solely financially responsible for any and all reasonable attorneys' and related fees and expenses incurred by the Participant(s) in connection with the foregoing.*

Doc. #10-1, PageID#123 (emphasis added).

Given that Harrison has achieved "some degree of success on the merits," in the form of a remand to the Plan Administrator for a full and fair review of whether he qualifies as a Plan Participant, he may well be entitled to reasonable attorney fees and costs under 29 U.S.C. § 1132(g)(1), Article 5.6 of the Plan, or both, despite the Court's finding that he is not entitled to severance benefits under the Plan. Accordingly, within fourteen (14) days of the date of this Decision and

---

success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010). The Sixth Circuit has held that, regardless of the ultimate outcome, a remand to a plan administrator for a full and fair review constitutes "some success on the merits," justifying an award of attorney fees. *McKay v. Reliance Standard Life Ins. Co.*, 428 F. App'x 537, 546-47 (6th Cir. 2011).

Entry, Harrison may file a Motion for Attorney Fees and Costs, along with itemized billing statements.

IV. **Conclusion**

For the above-stated reasons, the Court OVERRULES Plaintiff's Motion for Judgment Based on the Administrative Record, Doc. #9, and SUSTAINS Defendants' Motion for Judgment on the Administrative Record, Doc. #10.

Judgment shall be entered in favor of Defendants and against Plaintiff.

As explained above, even though Plaintiff is not the prevailing party, he may file a Motion for Attorney Fees and Costs within fourteen (14) days of the date of this Decision and Entry.[6]

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: August 20, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[6] A request for an award of attorney's fees may be addressed in a post-judgment proceeding. *See generally, White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445 (1982).